UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SARAH SPRENTALL and BARBARA TEFFT,

                Plaintiffs,

- against -

BEACON HEALTH OPTIONS, INC.,

                Defendant.

**ORDER**

20 Civ. 1703 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

        In this breach of contract action, Plaintiffs Sarah Sprentall and Barbara Tefft seek reimbursement for medical expenses pursuant to an insurance plan offered by Defendant Beacon Health Options, Inc. ("Beacon"). (Am. Cmplt. (Dkt. No. 15))  Beacon has moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 29)  For the reasons stated below, Defendant's motion will be denied.

## BACKGROUND

        Plaintiff Tefft is a retired New York State employee and a participant in the New York State Health Insurance Program ("NYSHIP").  Plaintiff Sprentall is Tefft's daughter.  (Am. Cmplt. (Dkt. No. 15) ¶¶ 7-8)  At all relevant times, Sprentall was an eligible dependent entitled to coverage under the NYSHIP.  (Id. ¶ 9)

        As a result of their participation in the NYSHIP, Tefft and Sprentall are enrolled in the Empire Plan's Mental Health and Substance Abuse Program (the "MHSA Program"), which provides insurance coverage for mental health care and substance abuse care to enrollees

in the NYSHIP and their eligible dependents.[1]  (Certificate (Dkt. No. 29-3) at 8, 89; Am. Cmplt. (Dkt. No. 15) ¶ 9)[2]

Beacon is the administrator of the MHSA Program.  (Certificate (Dkt. No. 29-3) at 89; Am. Cmplt. (Dkt. No. 15) ¶¶ 10-11)  According to Plaintiffs, Beacon is responsible for providing (1) "comprehensive coverage for mental health and substance abuse," including "inpatient psychiatric care and aftercare," and "[a]lternatives to inpatient care[,] such as certified residential treatment facilities"; and (2) "reimbursement for 80% of the reasonable and customary charges for covered services or actual billed services subject to a $1,000 deductible and a $3,000 co-insurance payment," with 100% reimbursement of reasonable and customary charges for covered services after the deductible and co-insurance have been satisfied.  (Id. at 89, 96-97, 100; Am. Cmplt. (Dkt. No. 15) ¶¶ 10-12)

In January 2018, Sprentall "was admitted to the Ca[yu]ga Medical Center [("Cayuga")] . . . for her fourth acute psychiatric inpatient stay of two consecutive months duration."  (Am. Cmplt. (Dkt. No. 15) ¶ 14)  "Beacon approved coverage for each admission, totaling approximately 13 weeks over 11 months."  (Id. ¶ 15)

"On February 19, 2018, Beacon approved the pre-authorization for [Sprentall] to receive treatment at Heritage Residential Community ('Heritage'), a residential treatment center ('RTC') in Provo, Utah" "that provides schooling and intensive mental health treatment" for adolescents at "a campus-like facility."  (Id. ¶¶ 16, 22)  Plaintiffs arranged travel and scheduled

---

[1] Plaintiffs contend that the benefit plans at issue are not covered by the Employee Retirement Income Security Act ("ERISA") (see id. ¶ 13), and Beacon has not disputed that assertion.
[2] The page numbers referenced in this Order correspond to the page numbers designated by this District's Electronic Case Files ("ECF") system.

admission, but because there was no anticipated discharge date included in Plaintiffs' request for pre-authorization, Beacon withdrew the pre-authorization on February 20, 2018. (Id. ¶ 18)

On February 27, 2018, Sprentall was discharged from Cayuga. (Id. ¶ 19) That same day, the Western New York Region Pre-Admission Certification Committee of the Office of Mental Health notified Cayuga that Sprentall had been certified as eligible for care at a RTC. (Id. ¶ 20) The next day, however, Beacon denied Plaintiffs' request for treatment at a RTC, "deeming it not medically necessary." (Id. ¶ 21) Sprentall nevertheless began treatment at Heritage on February 28, 2018. (Id. ¶ 22)

Plaintiffs paid for Sprentall's treatment at Heritage and submitted claims to Beacon for reimbursement. Plaintiffs sought reimbursement for Sprentall's entire 660-day stay at Heritage, from February 28, 2018 to December 20, 2019. (Id. ¶¶ 24-25) According to Plaintiffs, all services Heritage provided to Sprentall are "covered services under the Certificate, as they were medically necessary." (Id. ¶ 23) Beacon approved for coverage only 151 days of Sprentall's stay at Heritage, however, correlating with the period between September 12, 2018 and February 11, 2019. (Id. ¶ 26)

With respect to the MHSA Program, the Certificate describes as follows Beacon's process for determining medical necessity for outpatient and inpatient treatment:

> After the initial certification, the MHSA Program administrator monitors your care throughout your course of treatment to make sure it remains consistent with your medical needs. The concurrent review is based on the following criteria and applies whether you choose a network or non-network provider:
>
> - Medical necessity of treatment to date.
> - Diagnosis.
> - Severity of illness.
> - Proposed level of care.
> - Alternative treatment approaches.

3

> The Program administrator must continue to certify the medical necessity of your care for your Empire Plan mental health and substance abuse benefits to continue.

(Certificate (Dkt. No. 29-3) at 98)

The Certificate states that if the MSHA Program administrator denies authorization for a covered service, the insured "will have 180 days to request an appeal." (Id. at 99)  The Certificate describes the appeal process as follows:

> When you or your provider requests an appeal involving a clinical matter, a different Program administrator peer advisor will review your case and make a determination. The determination will be made as soon as your provider provides all pertinent information to the Program administrator peer advisor in a telephone review.  You and your provider will be advised in writing of the decision.
>
> If the peer advisor's determination is to continue to deny certification, you and your provider will be provided with written information on how to request a second-level appeal of the Program administrator's decision.  You have 60 days from the date of your receipt of the written denial notice to request a second-level appeal.
>
> Level 2 clinical appeals are conducted by a panel of two board-certified psychiatrists and a clinical manager from the MHSA Program administrator.  Panel members must not have been involved in the previous determinations of the case.  A determination will be made within 10 business days of the date the Program administrator received all pertinent medical records from your provider.  You and your provider will be notified in writing of the decision. . . .
>
> If an appeal involves an administrative matter, it will be reviewed by an employee of the Program administrator with problem-solving authority above that of the original reviewer.  Administrative appeals are reviewed by the MHSA Program administrator.

(Id.)

The Certificate further provides that where an insured has been denied coverage because the program administrator determined "that the service is not medically necessary," the insured "ha[s] a right to an external appeal of a denial of coverage."  (Id. at 110)  The insured "may appeal for review of [the administrator's medical necessity] decision by an external appeal agent, an independent entity certified by the New York State Department of Financial Services to conduct such appeals."  (Id.)  To qualify for an appeal before an external appeal agent, "[t]he

4

service, procedure or treatment must otherwise be a covered service under the Policy," and the insured "must have received a final adverse determination through the internal appeal process . . . ." (Id.)

The Certificate states that it is the insured's "responsibility to initiate the external appeal process . . . by filing a completed application with the New York State Department of Financial Services . . . within four months" of notification that the internal appeal upheld the denial of coverage, and that "[t]he external appeal agent's decision is binding on both parties." (Id. at 112)

The Certificate further provides that "[l]awsuits to obtain benefits may not be started less than 60 days or more than two years following the date you receive notice that benefits have been denied." (Id. at 109)

Here, Plaintiffs filed multiple appeals regarding Beacon's denial of benefits for the services Sprentall received at Heritage. Plaintiffs' appeals correlate with four different date ranges during which Sprentall received services at Heritage:

- Range 1: February 28, 2018 to June 22, 2018. Plaintiffs filed Level I and Level II internal appeals, which were denied on March 1, 2018. (Am. Complt. (Dkt. No. 15) ¶ 27)

- Range 2: June 23, 2018 to September 11, 2018. Plaintiffs filed internal appeals, and then an external appeal, which was denied on June 19, 2019. (Id. ¶ 28)

- Range 3: February 12, 2019 to May 31, 2019. Plaintiffs filed a Level I appeal, which was denied on December 6, 2019. (Id. ¶ 29)

- Range 4: June 1, 2019 through December 20, 2019 (the date of Sprentall's discharge). Plaintiffs did not file a Level 1 appeal for this period, because "doing so would be futile" given that "the basis for Beacon's denial, i.e. lack of medical necessity based on Plaintiff's admissions interview, is the same for this set of claims as the first two sets of claims." (Id. ¶ 30)

5

Plaintiffs contend they "have exhausted their administrative remedies by filing Level I appeals for the claim dated February 28, 2018 through May 31, 2019, and [by] demonstrating [the] futility of such appeal for dates of service June 01, 2019 through December 20, 2019." (Id. ¶ 31)

Plaintiffs paid Heritage $263,130.99 for the services provided to Sprentall, and submitted claims to Beacon for reimbursement in the same amount. Beacon reimbursed Plaintiffs for $27,983.00. (Id. ¶¶ 33-34) Plaintiffs contend that Beacon breached the Certificate by "wrongfully denying Plaintiffs' claims on the basis that the services provided were not medically necessary."[3] (Id. ¶ 35-36)

The Complaint was filed on January 21, 2020, in Supreme Court of the State of New York, New York County. (Cmplt. (Dkt. No. 10-1)) On March 3, 2020, Beacon removed the case to this District,[4] based on diversity of citizenship. (Dkt. No. 10) On April 10, 2020, Plaintiffs filed an Amended Complaint. (Dkt. No. 15) On August 21, 2020, Beacon moved to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 29)

## DISCUSSION

### I.     RULE 12(b)(6) STANDARD

"To survive a motion to dismiss [pursuant to Fed. R. Civ. P. 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v.

---

[3] Plaintiffs also claim that, in rejecting Plaintiffs' claims for reimbursement, Beacon has breached N.Y. Insurance Law § 3224-a. The Amended Complaint does not plead a cause of action for violation of the Insurance Law, however. (Am. Cmplt. (Dkt. No. 15) ¶ 36)

[4] The Notice of Removal (Dkt. No. 1) was filed on February 26, 2020, but was rejected because of a filing deficiency. It was refiled on March 3, 2020. (See Dkt. No. 10)

Twombly, 550 U.S. 544, 570 (2007)). "In considering a motion to dismiss[,] . . . the court is to accept as true all facts alleged in the complaint," Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 237 (2d Cir. 2007) (citing Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 87 (2d Cir. 2002)), and must "draw all reasonable inferences in favor of the plaintiff." Id. (citing Fernandez v. Chertoff, 471 F.3d 45, 51 (2d Cir. 2006)).

A complaint is inadequately pled "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement,'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557), and does not provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests." Port Dock & Stone Corp. v. Oldcastle Northeast, Inc., 507 F.3d 117, 121 (2d Cir. 2007) (citing Twombly, 550 U.S. at 555).

Under this standard, a plaintiff is required only to set forth a "short and plain statement of the claim," Fed. R. Civ. P. 8(a), with sufficient factual "heft 'to sho[w] that the pleader is entitled to relief.'" Twombly, 550 U.S. at 557 (alteration in Twombly) (quoting Fed. R. Civ. P. 8(a)). To survive a motion to dismiss, plaintiff's "[f]actual allegations must be enough to raise a right of relief above the speculative level," id. at 555, and present claims that are "plausible on [their] face." Id. at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678.

"Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557). Where "the allegations in a complaint, however true, could not raise a claim of entitlement to relief," Twombly, 550 U.S. at 558, or where plaintiffs

7

have "not nudged their claims across the line from conceivable to plausible, the[ ] complaint must be dismissed." Id. at 570.

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010) (citing Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002)). "Where a document is not incorporated by reference, the court may never[the]less consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." Id. (quoting Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006)). "On a motion to dismiss for breach of contract, courts look . . . at the contract itself, which by definition is integral to the complaint." Axiom Inv. Advisors, LLC ex rel. Gildor Mgmt., LLC v. Deutsche Bank AG, 234 F. Supp. 3d 526, 533 (S.D.N.Y. 2017) (citing Interpharm, Inc. v. Wells Fargo Bank, Nat. Ass'n, 655 F.3d 136, 141 (2d Cir. 2011)).

## II.     ANALYSIS

Beacon contends that Plaintiffs' breach of contract claim must be dismissed because Plaintiffs (1) are not in privity with Beacon; (2) did not exhaust their administrative remedies; (3) are obligated to pursue their claims under CPLR Article 78; and (4) have not alleged – as required by Article 78 – that Beacon's denial of benefits was arbitrary and capricious. (Dkt. No. 29-1)

### A.     Privity of Contract

To state a breach of contract claim, "the complaint must allege . . . the formation of a contract between the parties." Edwards v. Sequoia Fund, Inc., 938 F.3d 8, 12 (2d Cir. 2019)

(quotation marks omitted) (applying New York law).[5]  "[A] plaintiff may not maintain a cause of action for breach of contract [where there is] no contractual relationship with the [defendant] and [the plaintiff] was not in privity with [the defendant]." M. Paladino, Inc. v. J. Lucchese & Son Contracting Corp., 247 A.D.2d 515, 515 (2d Dept. 1998); Franklin Home Improvements Corp. v. 687 6th Ave. Corp., 19 Misc. 3d 1107(A), at *4 (Kings County. Sup. Ct. 2008) (same).

Beacon contends that the Amended Complaint does not plead facts demonstrating that "Beacon is a party to any contract with Plaintiffs sufficient to form the basis of a breach of contract action." (Def. Br. (Dkt. No. 29-1) at 12)  Plaintiffs do not dispute that Beacon is not a signatory to the Certificate.  Plaintiffs instead argue that the Certificate demonstrates "that Beacon is functionally the only party in privity with Plaintiff." (Pltf. Opp. (Dkt. No. 32) at 12)

As to whether Beacon is "functionally" in privity with Plaintiff, Beacon asserts that "[t]he NYSHIP is administered by the New York Department of Civil Service – not Beacon, and is specifically governed by Article XI of the New York Civil Service Law." (Def. Br. (Dkt. No. 29-1) at 12)  Accepting the factual allegations of the Amended Complaint as true, however, this Court must credit Plaintiff's assertion that Beacon administers the MHSA Program, which is the program to which Plaintiffs submitted their benefits claims.  (Am. Cmplt. (Dkt. No. 15) ¶ 10)  Moreover, Beacon's contention that it does not administer the MHSA Program is belied by the Certificate, which states that "ValueOptions is the administrator of the [MHSA] Program," and

---

[5] Because both sides cite exclusively to New York law in addressing Plaintiff's breach of contract claim (see Def. Br. (Dkt. No. 29-1) at 11); Pltf. Opp. (Dkt. No. 32) at 11-12), they have implicitly agreed that this Court should apply New York law in resolving Beacon's motion to dismiss.  See Golden Pac. Bancorp v. F.D.I.C., 273 F.3d 509, 514 n.4 (2d Cir. 2001) ("The parties' briefs assume that New York substantive law governs the issues of contract interpretation and statute of limitations presented here, and such implied consent is, of course, sufficient to establish the applicable choice of law."); Corbett v. Firstline Sec., Inc., 687 F. Supp. 2d 124, 128 (E.D.N.Y. 2009) (applying New York law where "both parties cite exclusively to New York contract law in their arguments").

that "ValueOptions rebranded and changed its name to Beacon Health Options, Inc." (Certificate (Dkt. No. 29-3) at 89)  Given that the Certificate identifies Beacon as the administrator, Beacon's argument to the contrary provides no basis for granting its motion to dismiss.

As to the privity issue, Beacon – which has the burden of proof on its motion to dismiss, De Dandrade v. United States Dep't of Homeland Sec., 367 F. Supp. 3d 174, 181 (S.D.N.Y. 2019), aff'd sub nom. Moya v. United States Dep't of Homeland Sec., 975 F.3d 120 (2d Cir. 2020) (The "movant bears the burden of proof" on "a Rule 12(b)(6) motion.") – has not cited a single New York case dismissing a breach of contract claim on privity grounds where the claim is brought by a plan participant against a third-party administrator.[6]  Moreover, at least one court in this Circuit has allowed a breach of contract claim brought under New York law to proceed against an insurance administrator that managed a program under the NYSHIP.

In Uddoh v. United Healthcare, No. 16CV1002BMCLB, 2017 WL 563973, at *1-2 (E.D.N.Y. Feb. 10, 2017), the insured was an employee of New York State who enrolled in the Empire Plan through the NYSHIP.  Plaintiff sued both the NYSHIP and United Healthcare after

---

[6]  Cases applying the law of other states – including California, Indiana, Pennsylvania, and Texas, see In re Consol. Welfare Fund ERISA Litig., 856 F. Supp. 837, 841-42 (S.D.N.Y. 1994) (applying California law; granting defendant summary judgment where there was no privity between plaintiffs and administrator and plaintiffs had not established that administrator's conduct was the proximate cause of plaintiffs' loss); Family Christian World, Inc. v. Philadelphia Indem. Ins. Co., No. 2:15-CV-102, 2015 WL 6394476, at *4 (N.D. Ind. Oct. 21, 2015) (dismissing plaintiff's Indiana breach of contract claim because plaintiff was not in privity with insurance plan administrator); Brand v. AXA Equitable Life Ins. Co., No. CIV.A. 08-2859, 2008 WL 4279863, at *2 (E.D. Pa. Sept. 16, 2008) (applying Pennsylvania law; "it is the general rule that an insured may bring claims for breach of contract and bad faith against the insurer who issued the policy but not against related parties, such as reinsurers and third party administrators, who are not in privity with the insured"); McCord v. Prudential Ins. Co. of Am., No. 1:10-CV-413, 2011 WL 13214397, at *8 (E.D. Tex. Feb. 10, 2011) (applying Texas law on a motion to remand; determining that insurance administrator that was not in privity with plaintiff was improperly joined) – are not controlling here.

United Healthcare denied him and his spouse medical benefits. The court found that the "NYSHIP is just the program name of the various insurance plans offered to state employees, which is administered by the Department of Civil Service, and Empire is simply one of those plans. . . . United, as the administrator, processes and handles claims made by beneficiaries of the Empire Plan." Id. at *3. The court permitted the breach of contract claim to proceed against United. Id at *4.

In sum, Beacon has not cited New York cases demonstrating that it is entitled to dismissal of Plaintiffs' claims on privity grounds. Accordingly, to the extent Beacon's motion to dismiss is predicated on a lack of privity, its motion will be denied.

### B. Exhaustion of Administrative Remedies

Beacon argues that Plaintiffs' breach of contract claim should be dismissed because Plaintiffs have not exhausted the administrative remedies listed in the Certificate, including an external appeal, as to all date ranges. (Def. Br. (Dkt. No. 29-1) at 12)  Plaintiffs counter that "[t]here is no mandate that the Plaintiffs pursue the external appeal process," given that the Certificate allows for "optional" or permissive appeals. (Pltf. Opp. (Dkt. No. 32) at 13-14)

"Under New York law, the initial interpretation of a contract 'is a matter of law for the court to decide.'" K. Bell & Assocs. v. Lloyd's Underwriters, 97 F.3d 632, 637 (2d Cir. 1996) (quoting Readco, Inc., v. Marine Midland Bank, 81 F.3d 295, 299 (2d Cir. 1996)); see also Terwilliger v. Terwilliger, 206 F.3d 240, 245 (2d Cir. 2000) ("Construing an unambiguous contract provision is a function of the court, rather than a jury, and matters extrinsic to the agreement may not be considered when the intent of the parties can fairly be gleaned from the face of the instrument." (citing Teitelbaum Holdings, Ltd. v. Gold, 48 N.Y.2d 51, 56 (1979))). "When interpreting a contract," the court's "'primary objective is to give effect to the intent of

the parties as revealed by the language of their agreement.'" Chesapeake Energy Corp. v. Bank of N.Y. Mellon Tr. Co., 773 F.3d 110, 113-14 (2d Cir. 2014) (quoting Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 232 F.3d 153, 157 (2d Cir. 2000)) (alterations omitted). "The words and phrases in a contract should be given their plain meaning, and the contract should be construed so as to give full meaning and effect to all of its provisions." Id. at 114 (alterations, internal quotation marks, and citation omitted).

Here, Beacon contends that Plaintiffs did not seek an external appeal for Range 1, Range 3, and Range 4, and thus Plaintiffs have not exhausted the available administrative remedies. (Def. Br. (Dkt. No. 29-1) at 14)  The Certificate does not mandate exhaustion of administrative remedies prior to filing a court action, however. Instead, the Certificate uses permissive language.

For example, the Certificate states that, "[i]n the event a certification or claim has been denied, in whole or in part, [the insured] can request a review." (Certificate (Dkt. No. 29-3) at 110) (emphasis added).

As to an external appeal, the Certificate provides as follows:

> Under certain circumstances, you have a right to an external appeal of a denial of coverage. Specifically, if the MHSA Program administrator has denied coverage on the basis that the service is not medically necessary . . . , you or your representative may appeal for review of that decision by an external appeal agent, an independent entity certified by the New York State Department of Financial Services to conduct such appeals.

(Id.) (emphasis added).

Moreover, the Certificate does not condition a plan participant's right to file a lawsuit on the denial of an external appeal. The Certificate merely states that "[l]awsuits to obtain benefits may not be started less than 60 days or more than two years following the date you receive notice that benefits have been denied." (Id. at 109)

12

Given the permissive language used in the Certificate, this Court cannot find that the Certificate requires exhaustion of administrative remedies before a plan participant can proceed to court. This Court cannot read into the Certificate an exhaustion requirement that is not expressed.

Beacon concedes that the language in the Certificate "relating to internal and external appeals is phrased as permissive instead of mandatory." (Def. Reply (Dkt. No. 33) at 12) Beacon argues, however, that New York law generally requires the exhaustion of administrative remedies "in the interest of preventing premature judicial interference with administrative efforts to develop a coherent enforcement scheme as well as to develop a factual record in the particular case." (Id.) According to Beacon, this Court should dismiss Plaintiffs' breach of contract claim pursuant to "this general ethos." (Id.)

This Court will decline Beacon's invitation to rely on the alleged "general ethos." Because the Certificate does not require exhaustion of administrative remedies prior to filing suit, Beacon's motion to dismiss will be denied to the extent that is predicated on a failure to exhaust administrative remedies.

C.     **Article 78 Proceeding**

Beacon contends that Plaintiffs' breach of contract claim should be dismissed because Plaintiffs were required to file an action pursuant to Article 78 of the New York Civil Practice Law and Rules, and have not done so. Beacon further contends that any Article 78 proceeding is now time-barred. (Def. Br. (Dkt. No. 29-1) at 15)

According to Beacon, an Article 78 proceeding is the proper vehicle for reviewing an external appeal decision by the New York State Department of Financial Services. (Id.)

As an initial matter, and as discussed above, the Certificate does not require a plan participant to exhaust the external appeal process before proceeding to court.

13

Moreover, it is far from clear that the New York State Department of Financial Services reviews external appeals under the Certificate.  (See Certificate (Dkt. No. 29-3) at 110 ("[Y]ou or your representative may appeal for review of that decision by an external appeal agent, an independent entity certified by the New York State Department of Financial Services to conduct such appeals."), 111 ("[T]he Department of Financial Services will forward the request to a certified external appeal agent."))  Beacon contends, however, that an Article 78 proceeding is the mechanism to review insurance plan determinations regarding medical necessity, "even when that decision is made by a third-party administrator. . . ."  (Def. Reply (Dkt. No. 33) at 14; see also Def. Br. (Dkt. No. 29-1) at 15)

Plaintiffs counter that they are not required to pursue an Article 78 proceeding, because they have "not alleged any action by any Administrative Agency of New York," and instead have only "alleged that Beacon, a private company, has breached the terms of the Certificate . . . in denying coverage for medically necessary services."  (Pltf. Opp. (Dkt. No. 32) at 15; see also Am. Cmplt. (Dkt. No. 15) ¶¶ 32-36)

An Article 78 proceeding "presents an opportunity to review whether a state agency or officer 'failed to perform a duty enjoined upon it by law,' or whether a specific act was 'made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion.'"  W.D. v. Rockland Cty., No. 19 CIV. 2066 (JCM), 2021 WL 707065, at *17 (S.D.N.Y. Feb. 22, 2021) (quoting N.Y. C.P.L.R. § 7803 (2019)).  Where – as here – a state agency or officer is not the defendant, courts have found that Article 78 is not the appropriate procedure.  See Karlen v. New York Univ., No. 78 CIV. 3416 (GLG), 1980 WL 240, at *2 (S.D.N.Y. Sept. 17, 1980), amended, No. 78-DIV. 3416 (GLG), 1980 WL 343 (S.D.N.Y. Dec. 12, 1980) ("Nothing contained in any ruling of a New York court, or from the

working of Article 78 itself, would indicate that an action for damages for breach of . . . contract by a private university must be brought only pursuant to the strict limitations of Article 78."); Scott v. Rockaway Cmty. Corp., 92 Misc. 2d 178, 180 (New York County Sup. Ct. 1977) ("[S]ince [defendant] is a private, not-for-profit corporation, it is not a 'body or officer' within the purview of CPLR 7802 (subd [a]).  Thus, this action is actually one to enforce private rights against a private corporation based in contract for which an Article 78 proceeding is not the proper remedy.")

The "uncommon exceptions" where courts have reviewed the decisions of "non-governmental agencies" under Article 78 "are limited to cases where the dispute is between a member or employee of the non-governmental organization and the organization itself and where the organization has powers, akin to a government, to affect the rights of a constituent member, employee or persons who, by the government mandate are subject to the powers of the body." Okslen Acupuncture P.C. v. Dinallo, 25 Misc. 3d 637, 641 (New York County Sup. Ct. 2009), aff'd, 77 A.D.3d 451 (2010) (collecting cases) (holding that an Article 78 proceeding was not available to enforce claims against insurance carriers and their claims administrator).  Although a private corporation formed pursuant to New York law can "become a 'quasi-governmental body,'" for purposes of an Article 78 proceeding, Goldman v. White Plains Ctr. for Nursing Care, LLC, 9 Misc. 3d 977, 979-80 (New York County Sup. Ct. 2005) (citations omitted), Beacon is not a New York corporation.  (See Notice of Removal (Dkt. No. 10) ¶ 6 ("Beacon is a Virginia corporation . . . ."))  In sum, no exception is applicable here to the general rule that an Article 78 proceeding is not a vehicle for enforcing claims against a private company.

Relying on Vellios v. Serio, 1 Misc. 3d 487, 489 (New York County Sup. Ct. 2003), Beacon contends that Plaintiffs must pursue their breach of contract claim in an Article 78

proceeding.  (Def. Br. (Dkt. No. 29-1) at 15)  Vellios does not support Beacon's argument, because the case does not suggest that Article 78 provides the exclusive vehicle for such a claim.

In Vellios, the court held that a non-profit organization that acted as an external appeal agent and made "the ultimate decision as to whether the patient's health costs will be covered by the health plan or the health plan's denial of coverage will be upheld" was an entity that "function[s] in an administrative capacity on behalf of the state[,] . . . which comes within the definition of a 'body' against whom an Article 78 proceeding will lie."  Id. at 488-89. "Under the circumstances, an Article 78 proceeding is the proper vehicle for reviewing the determination of [the non-profit external appeal agent] to uphold the health plan's denial of coverage."  Id. at 489.

As other courts have noted, however, "there [is] no language in [Vellios] stating that Article 78 was the only remedy for the plaintiff."  Mercy Flight Cent., Inc. v. Kondolf, 41 Misc. 3d 483, 490 (City of Canandaigua, City Ct. 2013) (emphasis in original).  Indeed, New York courts have construed the legislation that established administrative review of decisions denying coverage as intending to "provide a new, low-cost, expedited layer of review for consumers but not to supplant the review already available in the courts."  Id. at 491 (citing Schulman v. Grp. Health Inc., 39 A.D.3d 223, 224 (1st Dept. 2007)).

As with Beacon's privity argument, it fails to cite a single case in which a court addressing a breach of contract claim brought by a state employee or retiree against a third-party plan administrator for denial of benefits has held that the claim must be brought as an Article 78 proceeding.  While Beacon cites several cases that were brought as an Article 78 proceeding, these cases do not hold that Article 78 is the sole vehicle for a state employee or retiree who seeks to challenge a benefits determination by a third-party plan administrator.  (See Def. Br.

16

(Dkt. No. 29-1) at 15 (citing Lalani v. Bane, 199 A.D.2d 80, 80 (1st Dept. 1993)); Def. Reply (Dkt. No. 33) at 14 (citing Mitchell v. Dowdell, 172 A.D.2d 1032, 1032 (4th Dept. 1991); Caso v. New York State Pub. High Sch. Athletic Ass'n, Inc., 78 A.D.2d 41, 42, (4th Dept. 1980)))

Moreover, there are cases in which courts have permitted insureds' breach of contract claims against insurers and third-party plan administrators to proceed outside of an Article 78 proceeding. See Nenno v. Blue Cross & Blue Shield of W. New York, 303 A.D.2d 930, 931-32 (4th Dept. 2003) (breach of contract claim following an external appeal of an insurer's determination that requested care was not medically necessary); Uddoh, 2017 WL 563973, at *1-2 (E.D.N.Y. Feb. 10, 2017) (allowing state employee to proceed with claim against the plan administrator).

Given that Beacon has cited no authority suggesting that an Article 78 proceeding is Plaintiffs' exclusive remedy, Plaintiffs' breach of contract claim will not be dismissed on that basis.[7]

---

[7] Because the Court has concluded that Plaintiffs were not required to bring this action as an Article 78 proceeding, Beacon's remaining arguments concerning the pleading requirements for an Article 78 proceeding (See Def. Br. (Dkt. No. 29-1) at 15-18) are moot.

Beacon also contends that the Amended Complaint must be dismissed because Plaintiffs do not explain "why . . . Sprentall's treatment was 'medically necessary' or how Beacon erred in denying coverage." (Def. Reply (Dkt. No. 33) at 15 (emphasis omitted)). Because Beacon raised this argument for the first time in its reply brief, this argument is not properly before the Court and will not be considered. See, e.g., United States v. Sampson, 898 F.3d 287, 314 (2d Cir. 2018) ("[I]t is well-settled that we will not usually entertain an argument made for the first time in a reply brief"); United States v. E. River Hous. Corp., 90 F. Supp. 3d 118, 162 (S.D.N.Y. 2015) (collecting cases).

## **CONCLUSION**

For the reasons stated above, Defendant's motion to dismiss is denied. The Clerk of Court is directed to terminate the motion (Dkt. No. 29).

Dated: New York, New York
March 19, 2021

SO ORDERED.

*Paul G. Gardephe*

Paul G. Gardephe
United States District Judge